UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES LEWIS HOPKINS                                                                                          PLAINTIFF
#266215

V.                           Case No. 4:22-CV-01251-JM-BBM

HILL, Sergeant, Pulaski County Regional
Detention Facility; and DEVORE, Deputy,
Pulaski County Regional Detention Facility                                                              DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On December 19, 2022, Plaintiff James Lewis Hopkins ("Hopkins"), then a pretrial detainee in the Pulaski County Regional Detention Facility ("PCRDF"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983.[1] (Doc. 3). Thereafter, he filed two Amended

---

[1] The Court takes judicial notice that information regarding Hopkins's criminal case is openly available on "CourtConnect" on the Arkansas Judiciary website. *See* https://caseinfo.arcourts.gov (last visited June 7, 2024). Hopkins pled guilty in his state criminal case on July 27, 2023, in the Circuit Court of Pulaski County, Arkansas. *See* Plea Statement, *State v. Hopkins*, 60CR-22-3898.

Complaints. (Docs. 4, 7). All Complaints allege that Deputy Devore ("Devore") and Sergeant Hill ("Hill") (collectively, "Defendants") violated Hopkins's constitutional rights.[2] (Doc. 3 at 1–2; Doc. 4 at 1–2; Doc. 7 at 1–2). Hopkins specifically claims that, although he had a "bottom rack" script, Devore moved him to a cell where he was forced to sleep on the "top rack." (Doc. 3 at 4; Doc. 4 at 4; Doc. 7 at 3). Hopkins later had a seizure and fell off his bunk. (Doc. 3 at 4; Doc. 4 at 4; Doc. 7 at 3). When Hill responded to the incident, he told Hopkins he "did not care" and slammed the door in Hopkins's face. (Doc. 3 at 4; Doc. 4 at 4; Doc. 7 at 3).

On June 29, 2023, after the Court screened Hopkins's claims in accordance with the Prison Litigation Reform Act ("PLRA"), Hopkins was allowed to proceed with deliberate-indifference claims against Defendants Devore and Hill. (Doc. 13). On September 6, 2023, Defendants jointly filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts (Docs. 31–33). In their Motion, Defendants allege that Hopkins failed to exhaust administrative remedies pursuant to the PLRA. (Doc. 31). Hopkins filed a Response to Defendants' Statement of Facts on November 8, 2023.[3] (Doc. 36). The time for a reply brief has expired. LOCAL RULE 5.5(c). Thus, the issue of exhaustion is ready for disposition.

---

[2] Although Devore is not specifically listed as a Defendant in the Second Amended Complaint, Devore is named in Second Amended Complaint's "Statement of Claim" and "Relief" sections. (Doc. 7 at 3–4). Additionally, Hopkins initially named PCRDF as a defendant, but the Court dismissed all claims against PCRDF pre-service. (Doc. 13).

[3] On December 12, 2023, Hopkins filed a Motion for Appointment of Counsel (Doc. 37), and on December 21, 2023, Hopkins filed a Notice (Doc. 38). The Court denied Hopkins's Motion for Appointment of Counsel on March 11, 2023. (Doc. 39). Some portions of these filings are relevant to the Court's analysis and will be discussed herein.

After careful consideration of the record, the Court recommends that Defendants' Motion for Summary Judgment be granted, and all of Hopkins's claims be dismissed, without prejudice, for failure to exhaust administrative remedies.

## II. DISCUSSION

### A. The PLRA's Exhaustion Requirement

The PLRA requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process before initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90. Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly bring a claim in a § 1983 action.

Under the PLRA, however, "the Supreme Court has observed that '[a]n inmate ... must exhaust *available* remedies, but need not exhaust unavailable ones.'" *Muhammad*, 933 F.3d at 1000 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is unavailable: "(1) where it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the

administrative scheme is so opaque as to be practically incapable of use; and (3) where administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (citing *Ross*, 578 U.S. at 642–44) (cleaned up); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (holding remedy unavailable where prison officials misled inmate by advising him not to file a formal grievance until he received a response to his informal complaint); *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001) (holding that "once [prison officials] failed to respond to [prisoner's informal resolution request], no further administrative proceedings were 'available' to him"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding remedy unavailable when prison officials denied prisoner's requests for grievance forms).

Notably, an inmate's subjective beliefs regarding exhaustion are irrelevant in determining whether administrative procedures are available. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). Lastly, "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

    **B.**    **PCRDF Grievance Procedure**

The PCRDF has a grievance procedure in place to permit inmates to file grievances and appeals and to assure them of written responses from facility officials in a timely and orderly manner without fear of reprisal or prejudice. (Doc. 33-4). Any inmate may invoke the grievance procedures "regardless of his security or job classification, disciplinary status, or administrative or legislative decisions affecting the inmate." *Id.* at 3. An inmate

may invoke the grievance procedure by submitting a written complaint regarding one of the following:

> (a) Actions taken by staff or other inmates that have the effect of depriving the inmate of a right, service, or privilege.
>
> (b) Allegations of abuse, neglect, or mistreatment by staff or other inmates.
>
> (c) Any other matter the inmate believes to be illegal, a violation of department rules and regulations, or unconstitutional treatment or condition.

*Id.* at 1–2. The problem grieved "should be stated as briefly and clearly as possible." *Id.* at 4. Grievances must be filed within 15 days after the grievance occurrence with the Grievance Officer or designee. *Id.* If, after being responded to by the Grievance Officer or designee, the inmate is not satisfied, he or she "may appeal to the Chief of Detention within ten working days." *Id.* at 7. The entire grievance process must be completed within 30 working days unless a valid extension has been agreed upon or unforeseen circumstances have occurred.[4] *Id.* at 8. Therefore, to pursue his deliberate-indifference claims against

---

[4] While the appeal language is arguably ambiguous—an inmate "may" appeal if they are unsatisfied with the response—language later in the policy makes it clear that the appeal "is the final level of the appeal process." (Doc. 33-4 at 7); *see Taylor v. Holladay*, No. 4:16-CV-868-BRW-BD, 2017 WL 2819327, at *2 (E.D. Ark. June 1, 2017) (acknowledging the ambiguity in the PCRDF policy's grievance appeal language but noting that an inmate "must pursue an appeal of an adverse decision if he seeks to fully exhaust his administrative remedies"); *report and recommendation adopted*, 2017 WL 2818200 (E.D. Ark. June 29, 2017). Other district courts addressing the PCRDF policy agree—to comply with the PLRA, inmates must appeal responses to their grievances. *See Warren v. Hoilday*, No. 4:18-CV-00248-KGB-JTK, 2019 WL 4621647, at *3 (E.D. Ark. Aug. 29, 2019) (holding PCRDF inmate failed to exhaust where he failed to appeal any relevant grievance), *report and recommendation adopted sub nom. Warren v. Holiday*, No. 4:18-CV-00248-KGB-JTK, 2019 WL 4621899 (E.D. Ark. Sept. 23, 2019); *Gallardo v. Lemmons*, No. 4:23-CV-00468-JM-PSH, 2023 WL 6847694, at *4 (E.D. Ark. Oct. 17, 2023) (same), *report and recommendation adopted*, 2023 WL 7350073 (E.D. Ark. Nov. 7, 2023); *Engstrom v. Holladay*, No. 4:16-CV-00588-BSM-JJV, 2017 WL 1393713, at *3 (E.D. Ark. Feb. 14, 2017) (same), *report and recommendation adopted*, 2017 WL 1398327 (E.D. Ark. Apr. 14, 2017).

5

Defendants before this Court, Hopkins was required to raise this claim in a grievance, if available, and appeal an unsatisfactory response.

### C. Defendants' Motion for Summary Judgment[5]

Defendants argue that Hopkins failed to exhaust his administrative remedies prior to filing suit. (Doc. 31). In support of their Motion for Summary Judgment, Defendants attach the Affidavit of Defendant Hill, who is also the PCRDF Records Custodian. (Doc. 33-1). According to Hill, prior to filing this lawsuit, "[p]laintiff filed approximately 19 requests and grievances." *Id.* at 1, ¶ 6. However, in their supporting brief, Defendants specifically focus on the three grievances that arguably relate to this lawsuit. (Doc. 32 at 6–9). Defendants assert that Hopkins did not properly exhaust the claims in this lawsuit, as required by the PLRA, because Hopkins's three relevant grievances did not comply with the PCRDF grievance procedure. *Id.* Instead, Hopkins's three relevant grievances are vague, untimely, or not appealed. *Id.*

### D. Hopkins's Response to Defendants' Motion for Summary Judgment

In his Response to Defendants' Statement of Facts, Hopkins challenges several factual statements from Defendants. The Court lists the four relevant challenges below.

---

[5] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). At the summary judgment stage, a plaintiff cannot rest upon mere allegations and, instead, must meet proof with proof. *See* FED. R. CIV. P. 56(e).

First, Hopkins challenges Defendants' Statement of Facts ("Defendants' Statement"), Paragraph 2, which states: "Between Plaintiff's intake on October 3, 2022 and December 19, 2022, when Plaintiff commenced the instant action, Plaintiff filed approximately 19 requests and grievances." (Doc. 33 at 1, ¶ 2). In response, Hopkins says: "Due to PCRDF staff violating my rights, I've tried to file but I'm not a lawyer and have problems comprehending law but I know my rights, just don't know how to word it." (Doc. 36 at 1, ¶ 2).

Second, Hopkins challenges Defendants' Statement, Paragraph 11, which states: "Inmates confined at the Pulaski County Detention Facility will be permitted to file grievances/appeals and will be assured of written responses from facility officials in a timely and orderly manner without fear of reprisal or prejudice." (Doc. 33 at 5, ¶ 11). In response, Hopkins states: "Request the grievances and receipts from case 4:22-CV-00425 and 00426-KGB-JTR to prove they don't go by policy and this is relevant to my case to prove they don't go by grievance procedure." (Doc. 36 at 5, ¶ 11).

Third, Hopkins challenges Defendants' Statement, Paragraph 13, which defines "grievance" under the PCRDF Policy. (Doc. 33 at 5–6, ¶ 13). In response, Hopkins says: "then when you file a grievance on them violating [your] constitutional rights they always answer not grievable[.]" (Doc. 36 at 6, ¶ 13).

Fourth, Hopkins challenges Defendants' Statement, Paragraph 14, which states: "A summary of the inmate grievance system will be included in the Inmate Handbook and will be provided to inmates at the time of their admission into the facility." (Doc. 33 at 6, ¶ 14).

In response, Hopkins states: "And you always get the same answer or they lost your grievance and say it's too late to file (answer always not grievable)." (Doc. 36 at 6, ¶ 14).

In addition to his Response to Defendants' Statement of Facts, on December 12, 2023, Hopkins filed a Motion for Appointment of Counsel, containing two emergency grievance receipts. (Doc. 37). One of those grievance receipts—dated October 27, 2022, and labeled "Hill/Devore-4:22-CV-01251-JM-BBM"—is relevant to this case.[6] *Id.* at 3. Hopkins failed to provide the text of the grievance itself. Below the grievance receipt, someone handwrote: "They never answered so all remedies were extinguished." *Id.* at 3. On December 21, 2023, Hopkins refiled the same October 27, 2022 grievance receipt. (Doc. 38). The December 21, 2023 copy does not include the handwritten message regarding remedies. *Id.*

In sum, while Defendants argue that Hopkins did not exhaust his administrative remedies, Hopkins appears to argue that the grievance process was unavailable to him because (1) PCRDF officials always answer "not grievable," and (2) PCRDF officials lose and/or do not answer grievances. Below, the Court examines the relevant grievances and whether Hopkins exhausted his "available" administrative remedies in this case.

### E. Hopkins's Relevant Grievances

#### 1. October 26, 2022 Grievance

On October 26, 2022, Hopkins submitted the following grievance:

> Im in the computor bottom bunk and botton tear i was kidnapped and brought here against my will last night on b shift i told him that i was in fear that he

---

[6] The date on the second grievance receipt is illegible, and it contains the case number for another federal case. (Doc. 37 at 4).

> night put me in the sell to possible kill me at that he put his hands on me i have seziurs and i half to start the paper trail for a rongful death suit and wrongful incaseration suit i was kidnapped brought to arkansas put on a piece of property in jacksonnville off of maxie road were they staved 57 pounds off of me for my winnings at publisher clearing house 1-000-000-000 and 7000 aweek for life murder me kidnap my son which is my benafieroy if he lives to be a 100 he will recieve 71 million dollars they are trying to steal the money from the federal reserve witch is a fedreal offence by law you are responsible as an imployor of the county of pulakse county if you dont tell nobody and they kill my sons mother your accountabnle for a wrongful death suit not because you hurt someone one because you did nothing to stop it listen to my phone calls from this jail phone records please dont let my sons mother be murdered.

(Doc 33-3 at 9). On October 27, 2022, a PCRDF staff member responded: "Unit housing assignments are non grievable. This matter is beyond the control of the PCRDF. Please file a police report with that agency." *Id.* On October 30, 2022, Hopkins closed the grievance. *Id.*

According to Defendants, Hopkins's October 26, 2022 grievance cannot serve to exhaust his administrative remedies for two independent reasons: (1) the grievance is neither brief nor clear; and (2) Hopkins failed to appeal the response. (Doc. 32 at 6, 9). The Court agrees that either are fatal to Hopkins's claim.

To begin, in this one grievance, Hopkins mentions being kidnapped twice, potentially murdered, winning a Publisher's Clearinghouse sweepstakes, his son's mother being murdered, multiple wrongful death lawsuits, wrongful incarceration, et cetera. Remarkably, the one thing not mentioned in this grievance is whether he was made to occupy a top bunk, as alleged in this lawsuit. The PCRDF grievance procedure states that the problem grieved "should be stated as briefly and clearly as possible." (Doc. 33-4 at 4). Hopkins's October 26, 2022 grievance is neither. Moreover, because this grievance makes

9

no clear mention of the issue complained about in this lawsuit—being forced to sleep on a top bunk—this grievance cannot serve to exhaust his administrative remedies.

Additionally, Hopkins failed to appeal PCRDF's response to the vague, rambling, and mostly incoherent October 26, 2022 grievance.[7] (Doc. 33-3 at 9). As such, because Hopkins failed to appeal the response, Hopkins did not comply with PCRDF's grievance process, and the October 26, 2022 grievance does not serve to exhaust Hopkins's deliberate-indifference claims per PCRDF policy. In conclusion, for either of these reasons, the October 26, 2022 grievance cannot serve to exhaust Hopkins's remedies in this case.

### 2. November 26, 2022 Grievance

On November 26, 2022, Hopkins submitted the following grievance:

> [P]lease tell me how a depudy has the right to make medical decisions with out a medical degree I beleive sgt hill should exsplain to a judge or a jury why he thinks he can play god with a perspns life the gave me a bottom bunk bottom row because of my medical problems i beleive a jury would find in my favor and award me 100,000 dollars for a top bunk when the doctor clearly said im not supposed to be on the top dunk now im going to have surgery on my hip please if you dont name you in my suit for this claim i need you get me my paper work back.

(Doc. 33-3 at 19). On November 30, 2022, a PCRDF staff member responded: "Unit Deputy advised me that you are on the bottom bunk on the lower level." *Id.* On December 2, 2022, Hopkins closed the grievance. *Id.*

---

[7] At first blush, it appears the grievance process was "unavailable" to Hopkins, because a PCRDF staff member responded: "Unit housing assignments are not grievable." (Doc. 33-3 at 9). And, as the Court noted above, unit housing assignments are categorically non-grievable under PCRDF policy. (Doc. 33-4 at 8). However, the grievance process *is available* for any "[a]ctions taken by staff or other inmates that have the effect of depriving the inmate of a right, service, or privilege." (Doc. 33-4 at 1). Regardless, if Hopkins was not satisfied with the response to his vague and rambling grievance, his remedy was to appeal. At this juncture, the failure to appeal the grievance response in accordance with PCRDF policy is fatal.

According to Defendants, this grievance is vague and untimely. (Doc. 32 at 8). Additionally, Defendants allege that Hopkins failed to appeal the November 26, 2022 grievance. *Id.* at 8–9.

Because PCRDF answered the grievance on the merits, Defendants waived any procedural defect with the initial grievance. *See Hammett,* 681 F.3d at 947. However, because Hopkins *also* failed to appeal the November 26, 2022 grievance, Hopkins failed to comply with the PCRDF grievance policy. Obviously, based on the response to this grievance, PCRDF officials believed the issue to be resolved, as it notes that Hopkins was on a bottom bunk on the lower level. If Hopkins disagreed with this response, the PCRDF grievance policy required him to appeal—how else are PCRDF officials to know that the problem is not, in fact, resolved? Hopkins failed to appeal the grievance response and, thus, failed to exhaust his administrative remedies. Accordingly, just like Hopkins's October grievance, the November grievance cannot serve to exhaust Hopkins's claims in this case.

### 3. June 11, 2023 Grievance

On June 11, 2023, Hopkins submitted a grievance, stating the following:

> On 10-24-2022 i was put on a top bunk i feel of the top bunk then in november officer belt dropped me down some stairs then on 5-18-2023 i was attacked had x-rays taken of my jaw my ribbs now I tryed to sue turn key they said no so they told me that the doctor her self is responsible for not giving me the medical needs i need i want to have an x-ray of my right hip my right knee acess my injury and descuss my options with me this is my last grievance june 1 im going to file a law suit against the doctor in a personal capacity that's a lot of work when all she has to do take x-rays its cheper the 4 pulaski county defendents all so need a copy of my medical records for there attorney at risk asesment this is cruel and unfair punishment i deserve the best treatment I can get this is inhumane halfing to be in pain like this i pray that that you just take the x-rays i can't even put on my sock any more.

11

(Doc. 33-3 at 57). On June 16, 2023, a PCRDF staff member denied the grievance as repetitive. *Id.* On June 18, 2023, Hopkins closed the grievance. *Id.*

Hopkins filed the June 11, 2023 grievance *well after* he initiated this lawsuit in December 2022. The exhaustion of administrative remedies must occur *before* a lawsuit is filed. *See Johnson*, 340 F.3d at 627 ("If exhaustion was not completed at the time of filing, dismissal is mandatory"). For this reason, Hopkins's June 11, 2023 grievance cannot not serve to exhaust his claims in this case.

### 4.   October 27, 2022 Grievance Receipt

The Court will now address the October 27, 2022 grievance receipt filed by Hopkins and attached to his Motion for Appointment of Counsel. (Doc. 37 at 3). The grievance receipt contains the following handwritten message at the bottom: "They never answered so all remedies [sic] were exstingished [sic]." *Id.* The Court construes this as an assertion regarding the availability of the grievance process, much like Hopkins's assertion that PCRDF officials lose grievances. (Doc. 36 at 6). These assertions, however, without more, do not create a fact issue regarding the availability of administrative remedies.

To begin, Hopkins fails to provide any *proof*—in the form of an affidavit or otherwise—that PCRDF staff lose or fail to answer grievances generally, or in this case specifically. And the handwritten sentence at the bottom of a "Receipt for Emergency Situations (not a grievance)," attached to his Motion for Appointment of Counsel, is not proof. The handwritten message is not notarized; thus, for the court to consider this handwritten statement regarding the availability of remedies, Hopkins's submission must

12

comply with 28 U.S.C. § 1746. In pertinent part, 28 U.S.C. § 1746 specifies the requirements that, *if complied with*, allow an "unsworn declaration" to have the same "force and effect" as a sworn declaration:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).

28 U.S.C. § 1746(2). Simply put, this handwritten statement does *not* identify the declarant or declare under penalty of perjury that the content of the statement is true and correct. (Doc. 37 at 3). Because this statement lacks the required statutory language to allow the Court to accept it "as being true," it cannot be relied on to establish that Hopkins's remedies were unavailable or "exhausted." *See Zubrod v. Hoch*, 907 F.3d 568, 574–75 (8th Cir. 2018) ("[*In Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016)] [w]e interpreted Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury."); *Banks*, 829 F.3d at 668 ("Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct 'under penalty of perjury.'"). The Court will not consider this unsworn statement regarding the availability of remedies.

Because the unsworn statement is not "proof," Hopkins cannot meet proof with proof to defeat summary judgment. *See Barker v. Coleman*, Case No. 3:18-CV-137-DPM-JTR, 2020 WL 1046690 (March 3, 2020) (declining to adopt recommendation to deny Defendant's Motion for Partial Summary Judgment and instead granting the Motion,

stating that "proof must be met with proof at the summary judgment stage," and because Plaintiff's statement that he attempted to exhaust his remedies about an alleged assault was not "signed, dated, and certified as true and correct under penalty of perjury," it could not be considered in deciding the Motion for Summary Judgment) (citing *Zubrod*, 907 F.3d at 574–75); FED. R. CIV. P. 56(e).

Lastly, even if the Court considered the grievance receipt and corresponding statement as "proof," the existence of a single grievance receipt and an unsupported allegation—with *no additional information* regarding the substance of the grievance—simply does not create a fact issue in this case. The same goes for Hopkins's assertion, in his Response to Defendants' Statement of Facts, that PCRDF loses grievances. Neither of these pronouncements specify what bunk-related grievance Pulaski County officials lost or did not answer. *Cf. Stephens*, 2020 WL 5540056, at *3–4 (stating plaintiff submitted two sworn statements that provided information about the grievance at issue and asserted that PCRDF officials did not respond to his grievances); *McPeek v. Blanchard*, 670 F. App'x 424 (8th Cir. 2016) (unpublished) (stating plaintiff provided an affidavit that he complied with the procedural requirements and a written document that appealed the lack of response he received); *Conner v. Doe*, 285 F. App'x 304 (8th Cir. 2008) (unpublished) (stating plaintiff provided the number of grievances and the subject matter of the grievances); *Mitchell v. Brown*, No. 3:16-CV-103, 2016 WL 6304505, *1 (E.D. Ark. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6272368 (E.D. Ark. Oct. 25, 2016) (stating plaintiff provided the number of grievances, who they were handed to, what the label on the grievance stated, and that he never received a response); *Bowden v. Banks*, 5:13-CV-

00179, 2014 WL 6390276 (E.D. Ark. Nov. 14, 2014), *aff'd*, 607 F. App'x 618 (8th Cir. 2015) (stating plaintiff provided the exact date grievances were filed, the subject matter of the grievances, where he filed the grievances, and which officers refused to accept them); *Williams v. Payne*, No. 4:22-CV-00826, 2023 WL 11055215, *2 (E.D. Ark. Dec. 5, 2023), *report and recommendation adopted*, 2024 WL 1256349 (E.D. Ark. Mar. 25, 2024) (stating plaintiff provided a copy of the grievance in question and an affidavit explaining how he was prevented from completing the grievance); *see also Martin v. Pruitt*, No. 2:18-CV-00161, 2019 WL 7756255 (E.D. Ark. Jul. 31, 2019), *report and recommendation adopted*, 2019 WL 5459169 (E.D. Ark. Oct. 24, 2019) (holding a claim that a specific guard threatened plaintiff if he filed a grievance was insufficient to support plaintiff's failure to exhaust administrative remedies given that plaintiff had previous filed a multitude of grievances). In conclusion, Hopkins provides *no* underlying facts or context regarding his allegation that PCRDF officials lose grievances or do not answer, and he failed to attach the corresponding October 26, 2022 grievance to this October 27, 2022 grievance receipt. Accordingly, Defendants are entitled to judgment as a matter of law.

### III.   CONCLUSION

To fully and properly exhaust all available administrative remedies as required by law, the PCRDF grievance procedure required Hopkins to appeal any grievance response he received if he was unsatisfied or disagreed. He did not do so. Thus, viewing the record in the light most favorable to Hopkins, there is no genuine dispute as to any material fact. Defendants' Motion for Summary Judgment should be granted. Hopkins's Complaint, First

15

Amended Complaint, and Second Amended Complaint (Docs. 3, 4, 7) should be dismissed, without prejudice, for failure to exhaust available administrative remedies.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 31) be GRANTED.

2. Hopkins's Complaint, First Amended Complaint, and Second Amended Complaint (Docs. 3, 4, 7) be DISMISSED, without prejudice, for failure to exhaust available administrative remedies.

3. Judgment be entered accordingly.

DATED this 28th day of June, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE